**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

UNITED STATES OF AMERICA

v.                                        Case No. 3:19-cr-14-004

RONDELL L. LUNDY,

Defendant.

### MEMORANDUM OPINION

This matter is before the Court on the DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT §§ 3582(c)(1)(A)(i) AND 3553(a) SENTENCE FACTORS (ECF No. 266); MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT (ECF No. 300) and MEMORANDUM IN SUPPORT (ECF No. 301); United States' Response in Opposition to Defendant's Motion for Compassionate Release (ECF No. 306); DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE/SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 357); POSITION STATEMENT PURSUANT TO THE COURT'S ORDER (ECF No. 363)("Position Statement") United States' Response in Opposition to Defendant's Motion for Compassionate Release (ECF No. 366); DEFENDANT RONDELL LUNDY'S REPLY TO THE GOVERNMENT'S SUPPLEMENTAL RESPONSE PURSUANT TO THE COURT'S ORDER OF SEPTEMBER 5, 2023 (ECF No. 370); DEFENDANT RONDELL LUNDY'S SUPPLEMENTAL BRIEF (ECF No. 374); the MOTION FOR CASE STATUS UPDATE (ECF No. 376); and DEFENDANT'S OMNIBUS MOTION TO EXPEDITE DISPOSITION OF 18 U.S.C. § 3582 MOTION AND, IN THE ALTERNATIVE, FOR MODIFICATION OF

SUPERVISED RELEASE TERM UNDER 18 U.S.C. § 3583(e) (ECF No. 378).
For the reasons set forth below, the MOTION FOR COMPASSIONATE
RELEASE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT (ECF No.
300) and the POSITION STATEMENT PURSUANT TO THE COURT'S ORDER (ECF
No. 363) will be partially granted.

## BACKGROUND

The defendant, Rondell L. Lundy was indicted on a charge of
Conspiracy to Distribute and Possess with the Intent to Distribute
500 Grams or More of Cocaine Hydrochloride. ECF No. 269, ¶ 1. On
April 12, 2019, Lundy pled guilty. Id. ¶ 3. The Indictment alleged
that Lundy participated in an ongoing cocaine distribution
conspiracy between approximately January 2013 and August 2017. Id.
¶ 1. Lundy began by buying and selling relatively small amounts of
cocaine. After a few years, his sales escalated, including a
purchase of half a kilogram at one time from his supplier. Id. ¶
40.

The Base Offense Level for Conspiracy to Distribute Between
3.5 and 5 Kilograms of Cocaine is 28. Id. ¶ 54. Lundy was credited
with a 3 point decrease for Acceptance of Responsibility. Id.
¶¶ 61-62. Lundy was subject to the Career Offender Enhancement
because the offense of conviction was a felony controlled substance
offense and he had two prior convictions for either a crimes of
violence or controlled substance offenses. Thus, his Total Offense
Level was 31 and Criminal History was automatically VI. The

2

Guidelines Range was 188-235 months. The statutory offense range was 5-40 years.

On July 18, 2019, Lundy was sentenced to 188 months imprisonment followed by 4 years of supervised release. ECF No. 187. Lundy's sentence was subsequently reduced to 150 months. ECF No. 356.

Lundy presents three primary arguments for compassionate release: (1) Lundy's health risks; (2) a change in the law affected by the decision in United States v. Norman, 935 F.3d 232 (4th Cir. 2019), pursuant to which Lundy would no longer qualify for the career offender enhancement; and (3) his need to care for his minor daughter following her mother's death.

## DISCUSSION

### I.   The Statutory Framework

The applicable statute, 18 U.S.C. § 3582(c)(1)(A) provides, in pertinent part, that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that 'extraordinary and compelling reasons' warrant such a reduction." It is settled that the burden is on the defendant to prove that extraordinary and compelling conditions exist for compassionate release under § 3582(c)(1)(A)(i). United States v. White, 378 F. Supp. 3d 784, 785 (W.D. Mo. 2019).

As the United States Court of Appeals for the Fourth Circuit recently explained:

Congress authorized "compassionate release" in 18 U.S.C.§ 3582(c)(1)(A). That provision begins with the general rule that a "court may not modify a term of imprisonment once it has been imposed." Id. It then describes an exception to that rule, in which courts may consider motions made by defendants who have exhausted their administrative remedies and are seeking a sentence modification. Id.; see also United States v. Bethea, 54 F.4th 826, 831 (4th Cir. 2022). A court can grant a compassionate release motion if it finds that (1) "extraordinary and compelling reasons warrant such a reduction," (2) "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" and (3) that the § 3553(a) factors weigh in favor of granting relief, "to the extent that they are applicable." See § 3582(c)(1)-(2).

Elements one and two are supposed to work together. Because "[§]3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release," the "Sentencing Commission, pursuant to authority granted it by Congress," does so instead. McCoy, 981 F.3d at 276 (quoting § 3582(c)(1)(A)(i)). But that only works when there is an applicable policy statement. . . . Without a policy statement applicable to compassionate release motions made by defendants, the district court had discretion to make its "own independent determination of what constitutes an extraordinary and compelling reason under § 3582(c)(1)(A) . . . ." Id. at 284 (cleaned up).

If a district court finds extraordinary and compelling circumstances warrant a sentence reduction, it must then consider whether the factors in § 3553(a) support such a decrease. The § 3553(a) factors include "the nature and circumstances of the offense" as well as the defendant's history and characteristics, the "kinds of sentences available," and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(1), (3), (6). They also include the need for the

4

> sentence "to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense," to deter criminal conduct, to protect the public and to provide the defendant with appropriate resources such as "medical care" and "vocational training." <u>Id.</u> § 3553(a)(2). But district courts are only required to address the § 3553(a) factors "to the extent that they are applicable." § 3553(a).

<u>United States v. Burleigh</u>, 145 F.4th 541, 547-48 (4th Cir. 2025). If Lundy were sentenced today, his guideline range would be 84-105 months of imprisonment. ECF No. 364, 1.

These principles guide the analysis of Lundy's motion for compassionate release.

## II.  The Exhaustion Requirement

To begin, the Court may consider a motion for compassionate release only if the defendant has fully exhausted all administrative rights to appeal the failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from receipt of such a request by the Warden of the defendant's facility whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). If the defendant has administratively exhausted his claim for release or the Government does not contest the exhaustion requirement, the district court will conduct a two-step inquiry to decide whether to reduce the defendant's sentence under the statute.  <u>United States v. Bond</u>, 56 F.4th 381, 383 (4th Cir. 2023).

On September 11, 2020, Lundy filed his Request for Administrative Remedy with the BOP. ECF No. 301, 4. Lundy's petition was denied October 1, 2020. Id. The Government conceded Lundy satisfied the exhaustion requirement. ECF No. 306, 8. The record supports the finding that Lundy has exhausted his administrative remedies.

## III. Extraordinary and Compelling Reasons

Now the inquiry turns to whether Lundy has established the existence of extraordinary and compelling reasons that warrant compassionate release. The Sentencing Commission has issued a policy statement on extraordinary and compelling reasons for compassionate release. It is U.S.S.G. § 1B1.13(b), and it provides as follows:

> (b) EXTRAORDINARY AND COMPELLING REASONS.[1]—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>     (1) MEDICAL CIRCUMSTANCES OF THE DEFENDANT
>     . . .
>         (B) The defendant is—
>             (i) suffering from a serious physical or medical condition,
>             (ii) suffering from a serious functional or cognitive impairment, or
>             (iii) experiencing deteriorating physical or mental health because of the aging process,
>         that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>         (C) The defendant is suffering from a medical condition that requires long-term or specialized

---

[1] Subsections (2) and (4) have no application to this case so only the titles of the subsections are set out above.

>>>> medical care that is not being provided and without
>>>> which the defendant is at risk of serious
>>>> deterioration in health or death.
>>>>
>>>> . . .
>>>>
>>>> (2)  AGE OF THE DEFENDANT
>>>> (3)  FAMILY CIRCUMSTANCES OF THE DEFENDANT.—
>>>>> (A) The death or incapacitation of the caregiver of
>>>>> the defendant's minor child or the defendant's
>>>>> child who is 18 years of age or older and incapable
>>>>> of self-care because of a mental or physical
>>>>> disability or a medical condition.
>>>>
>>>> . . .
>>>>
>>>> (4)  VICTIM OF ABUSE
>>>> (5)  OTHER REASONS.— The defendant presents any other
>>>> circumstance or combination of circumstances that, when
>>>> considered by themselves or together with any of the
>>>> reasons described in paragraphs (1) through (4), are
>>>> similar in gravity to those described in paragraphs (1)
>>>> through (4).
>>>> (6)  UNUSUALLY LONG SENTENCE.—If a defendant received an
>>>> unusually long sentence and has served at least 10 years
>>>> of the term of imprisonment, a change in the law (other
>>>> than an amendment to the Guidelines Manual that has not
>>>> been made retroactive) may be considered in determining
>>>> whether the defendant presents an extraordinary and
>>>> compelling reason, but only where such change would
>>>> produce a gross disparity between the sentence being
>>>> served and the sentence likely to be imposed at the time
>>>> the motion is filed, and after full consideration of the
>>>> defendant's individualized circumstances.

And, § 1B1.13(c) and (d) provide:

>> (c)  LIMITATIONS ON CHANGES IN LAW.—Except as provided in
>> subsection (b)(6), a change in the law (including an amendment
>> to the Guidelines Manual that has not been made retroactive)
>> shall not be considered for purposes of determining whether
>> an extraordinary and compelling reason exists under this
>> policy statement. However, if a defendant otherwise
>> establishes that extraordinary and compelling reasons warrant
>> a sentence reduction under this policy statement, a change in
>> the law (including an amendment to the Guidelines Manual that
>> has not been made retroactive) may be considered for purposes
>> of determining the extent of any such reduction.

>> (d)  REHABILITATION OF THE DEFENDANT.—Pursuant to 28 U.S.C.
>> § 944(t), rehabilitation of the defendant is not, by itself,

an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

U.S.S.G. § 1B1.13(b)(1)-(6), (c), (d).[2]

Lundy's arguments are three-fold: (1) his serious medical conditions make him vulnerable to COVID-19; (2) changes to the law because of the decision in <u>United States v. Norman</u>, 935 F.3d 232 (4th Cir. 2019) make his sentence unusually long; (3) the death of the mother of one of his children.

**A. Serious Medical Conditions**

Lundy argues that his medical conditions make him specially at risk for COVID-19, and that he should be released on that basis. That argument no longer applies because COVID-19 is not a significant risk. And, in any event, Lundy did not carry his burden to show a particularized risk to him or at the facility of incarceration. However, the Court will consider whether his ongoing health issues are nonetheless extraordinary and compelling reasons for his release.

---

[2] Lundy relies largely on <u>United States v. McCoy</u>, 981 F.3d 271 (4th Cir. 2020), wherein the Fourth Circuit held that, in the absence of a Guidelines policy statement, "district courts are 'empowered . . . to consider <u>*any* extraordinary and compelling reason</u> for release that a defendant might raise.'" <u>Id.</u> at 284 (citation omitted) (emphasis added). However, because in this case there is a Guideline policy statement, the "any extraordinary and compelling reason" that might be raised does not apply.

U.S.S.G. § 1B1.13 (b)(1)(B)(i) provides that medical conditions can be extraordinary and compelling reasons when a defendant is "suffering from a serious physical or medical condition. . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(C) provides that extraordinary and compelling reasons can include when "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."

Lundy has been diagnosed with a heart condition, deep vein thrombosis in his leg, Marfan syndrome, hypertension, aortic valve disorder, coagulation defects, and rheumatoid arthritis. ECF No. 301, 2-3. Extensive medical records from Lundy's time at BOP have been filed with the Court. ECF No. 366-3. The records reflect ongoing treatment and monitoring of Lundy's serious conditions.

Lundy argues that FCI Butner, where he is housed, is not equipped to manage his extensive medical issues. ECF No. 370, 3. Lundy argues that FCI Butner is the most likely place for an inmate to die, citing an NPR report which discusses FCI Butner's "failure to adequately address medical issues properly or in a timely fashion where those individuals' lives could be saved." Id.; ECF

9

No. 370-1. Further, Lundy argues that at night there are no medical staff present and he would be unable to access care should he suffer a medical emergency. ECF No. 370, 3. Lundy also asserts that FCI Butner cannot address his cardiac issues. Id. He cites his doctor at Duke Medical Center's recommendation that he should be monitored at least annually and that his blood pressure should be monitored more regularly. Id. He also reports that the doctor at Duke Medical Center expressed concern about FCI Butner's failure to provide hypertension medication. Id.

The Government responds that Lundy's health issues are being managed well while he is incarcerated, and that he has sufficient access to necessary doctors and treatment. ECF No. 366, 3; ECF No. 366-1 (Declaration of Lawrence Sichel MD, Medical Officer at FCI Butner I). Dr. Sichel states that Lundy is stable on his medication for anticoagulation and will continue to receive monthly visits with a provider for treatment. ECF No. 366-1, 4. Dr. Sichel notes that, when an individual's hypertension is controlled by medication the blood pressure need not be frequently monitored, as is the case for Lundy. Id., 5. Addressing the statements by the Duke Medical Center doctor, Dr. Sichel states that the doctor reported Lundy was doing well and should be seen in a year. Id., 6-7. Dr. Sichel reports that Duke recommended monitoring Lundy's blood pressure, and that FCI Butner did so, monitoring Lundy's

blood pressure weekly until it was determined that he was stable. Id., 8.

Based on the review of the record, the Court finds that, although Lundy's medical conditions are serious, there is not evidence that they "substantially diminish [his] ability to provide self-care. . . ." U.S.S.G. § 1B1.13(b)(1)(B)(i). And, although there is evidence that Lundy needs "long-term specialized medical care," there is no evidence such medical care is "not being provided." U.S.S.G. § 1B1.13(b)(1)(C). United States v. Evins, Criminal Case No. 3:23cr81, 2025 WL 87959, at *7 (E.D. Va. Jan. 13, 2025) (finding that while defendant had serious medical issues, they were being sufficiently treated at BOP and therefore not sufficient to grant compassionate release).

Further, Lundy's medical history was known to the Court at the time of his sentencing, reflected in both the PSR and on the transcript of the sentencing hearing. PSR ¶¶ 87-88; ECF No. 215, 8-9, 15-16. On this record, the Court cannot find Lundy's medical conditions to be extraordinary and compelling.

## B. Unusually Long Sentence / Change in Law

Lundy argues that pursuant to United States v. Norman, he would no longer be a Career Offender and thus his sentence should be reduced. Lundy is correct that there was an intervening change in the law. United States v. Norman held that a conspiracy to distribute a controlled substance is not a controlled substance

11

offense under the Guidelines. 935 F.3d 232, 239 (4th Cir. 2019). As a result of Norman, the offense of conviction is not a predicate offense for the purposes of the Career Offender Enhancement. So, Lundy's guidelines would drop from 188-235 months to 84-105 months imprisonment. As previously noted, Lundy is currently serving a (previously reduced) 150 month sentence. There is a significant disparity between the current sentence of 150 months and the bottom of the new guidelines range of 84 months (66 month disparity), as well as the top of the new guidelines range, 105 months (45 month disparity).

The Government's principal argument in opposition to the Position Statement is that the Fourth Circuit's decision in United States v. Ferguson precludes Lundy from arguing that Norman means his sentence should be reduced. ECF No. 366, 4. That argument misses the point. First, Ferguson does not apply to the facts here. Ferguson spoke to whether a defendant could use the compassionate release statute to challenge his conviction and the guidelines calculation as made at the time of his original sentencing. United States v. Ferguson, 55 F.4th 262, 266 (4th Cir. 2022). Lundy does not attack his conviction. Nor does he argue that his guidelines were incorrectly calculated at his sentencing. Rather, he argues that, because of a change in the law (United States v. Norman), the guidelines would now be calculated differently. And, he is correct.

12

Concepcion v. United States held that courts could consider intervening changes in law for compassionate release motions. Concepcion v. United States, 597 U.S. 481, 500 (2022). While Concepcion specifically applied to Section 404 First Step Act motions, there is no reason why it should not equally apply to Section 603. United States v. Nicholas, Criminal No. 3:17cr120, 2024 WL 1658248, at *3 (E.D. Va. April 17, 2024). Doing that here means that today Lundy would not qualify for the career offender enhancements. His criminal history score would be IV, not VI.

However, the U.S.S.C. revised § 1B1.13, its policy statement respecting what constitutes Extraordinary and Compelling Reasons for compassionate release, in 2023. Lundy does not fit the criteria for § 1B1.13(b)(6) [Unusually Long Sentence] because he has not served 10 years. U.S.S.G. § 1B1.13(b)(6). § 1B1.13(c) provides that, except as provided in § 1B1.13(b)(6), Unusually Long Sentence, "a change in the law. . . shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement."

Therefore, under the text of § 1B1.13(c), Lundy's reliance on the decision in Norman does not serve to establish an extraordinary and compelling reason for compassionate relief.  However, the recent decision in Concepcion v. United States, 597 U.S. 481 (2022), although decided under Section 404 of the First Step Act, rather than Section 603 (the compassionate release section),

13

teaches that, in modification of sentences that are permitted by law, district courts have discretion to consider changes in facts and in law. In other words, in Section 404 cases, Concepcion authorizes consideration of rehabilitation evidence as well as changes in the law. There is no reason why the reasoning that produced that concept in Concepcion in Section 404 cases should not be applied in Section 603 cases.

Concepcion was decided before the most recent amendment to § 1B1.13, but, the Guidelines are advisory and the decisions of the Supreme Court are not. Therefore, because the reasoning of Concepcion, as to Section 404 motions, applies with equal force to Section 603 motions, a change in the law can provide the predicate for a finding of extraordinary and compelling reasons for compassionate release.

But, not every change in the law is sufficient to that end. And, so it is necessary to determine whether the change on which Lundy relies is a sufficient predicate for a finding of an extraordinary and compelling reason.

True, the change in law (the decision in Norman) operates to relieve Lundy of the Career Offender Enhancement in calculating his Criminal History Category. Thus, Lundy's Criminal History Category would be reduced from VI to IV and his Total Offense Level would be decreased from 31 to 25. ECF No. 311, 1. His new guideline range would be 84-105 months, instead of 188-235 months. Without

14

doubt, Lundy's original sentence range (188-235 months) was unusually long when compared with what the sentence range would be today (84-105 months). And that is not altered by the previous reduction to 150 months. So, the length of Lundy's sentence can constitute an extraordinary and compelling circumstance even though his situation does not fit within § 1B1.13(b)(6).

### C. Family Circumstances

Lundy also argues that he should be granted compassionate release because the death of the mother of one of his children necessitates that he be available to care for the child. ECF 357, 4; ECF No. 370, 4. Lundy argues that it "would appear to be best in the child's interest if defendant who is and always has been a caring and loving father to be granted the requested relief." ECF No. 357, 4. The Court accepts Lundy's statement that he is a loving father, but that does not control the analysis under the law.

Under the guidelines, the following family circumstances are extraordinary and compelling:

(3) Family Circumstances of the Defendant. —

(A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

(B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

> (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
>
> (D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "immediate family member" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3). Lundy relies on subsection (A): that the caregiver of his minor child died. However, courts in this Circuit, when considering this guideline provision, have held that there must be a showing that there is no other caregiver available for the child. United States v. Waldron, Criminal Action No. 2:17-cr-00116, 2023 WL 4306910 at *2-3 (S.D.W. Va. June 30, 2023); United States v. Richardson, NO. 5:18-CR-507, 2020 WL 2200853 at *2 (E.D.N.C. May 6, 2020); see also United States v. Taylor, 820 F. App'x 229, 230 (4th Cir. 2020)(Mem.)(directing the district court to consider if an alternative caretaker existed for the children). Those decisions are persuasive. Here, Lundy's child is in the care of his mother, and Lundy does not allege that his mother is unable to take care of the child. Therefore, the Court finds Lundy's family circumstances argument does not establish an extraordinary and compelling reason for release.

## IV. 18 U.S.C. § 3553(a)

Next, the analysis requires consideration of the 18 U.S.C. § 3553(a) factors. Those factors include, among others, (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the need for the sentence to reflect the seriousness of the offense and promote respect for the law, (4) the need to afford adequate deterrence, (5) the need to protect the public, and (6) the need to avoid any unwarranted sentence disparities.

First, the nature and circumstances of the offense. Lundy engaged in a conspiracy to distribute narcotics between January 2013 and August 2017. ECF No. 269 ¶ 1. The reasonably foreseeable amount of cocaine distributed by Lundy and known members of the conspiracy was 4.5 kilograms. ECF No. 269, ¶ 29. That is a significant amount of cocaine over a significant period of time. These actions are undoubtedly serious and caused harm to the community. Lundy highlights that there are no allegations that he possessed or used any firearm during the conspiracy. ECF No. 301, 9. That does not diminish the seriousness of introducing such a sizeable amount of cocaine into the community.

The next factor is the history and characteristics of the defendant. In this analysis the Court can consider post-sentencing conduct. Lundy has largely demonstrated positive conduct in prison. He completed his GED and took courses including the

17

Servesafe Food Handlers Course. ECF No. 375-1, 3. He also intervened in an incident where another inmate was assaulting a staff member and pulled the other inmate off the staff member. ECF No. 375-1, 2. Staff credits Lundy with preventing the situation from becoming even more dangerous. Id. However, Lundy has also received two disciplinary infractions. In September of 2024, Lundy received an infraction for "disruptive conduct-greatest" and in October of 2022 Lundy received an infraction for "possessing drugs/alcohol." Id. at 3. The Court does not have any details regarding the infractions, which mar an otherwise positive record while incarcerated. Absent further information, those incidents do cut against a finding that Lundy has showed evidence of rehabilitation while in prison.

Lundy also struggles with serious health issues, making it difficult for him to walk. ECF No. 301, 9. He coughs up blood and suffers from chest pain. Id. Although that alone is not a reason for compassionate release, his medical conditions and history do make it significantly less likely Lundy will re-offend or be a danger to the community.

Further, Lundy has the support of his family. His mother and step-father are active in his life and are said to be "hard-working role models." ECF No. 301, 9. He would reside with his mother if released from incarceration. Id. at 9-10.

18

On the other hand, Lundy has previous violent convictions. Specifically, he was convicted of an unlawful wounding in 2005. ECF No. 269, ¶ 67. He was sentenced to five years, with four years and eight months suspended. Id. Within a year, Lundy was back in front of the court for Distribution of an Imitation Controlled Substance. Id. ¶ 68. Lundy argues that these crimes occurred when he was 18 and 19, and there is no pattern of violent crime. ECF No. 301, 9. However, in 2010 Lundy was convicted of assault and was sentenced to 12 months with 10 months suspended. ECF No. 269, ¶ 70. A few months later, Lundy was convicted of obstruction of justice because of witness intimidation. Id. at ¶ 72. That record reflects a propensity to engage in violent conduct. The Government also argues that this demonstrates a pattern: Lundy receives leniency and then proceeds to commit more crimes. ECF No. 306, 15.

The Government is correct that Lundy did not learn from the leniency that has been extended to him in the past. However, Lundy has served only 17 months in jail before his conviction in this case. ECF No. 269 ¶¶ 67, 68, 70, 71. He has served nearly seven years of this sentence. ECF No. 311, 1. He is an older man now, and his health continues to severely affect him.

Factors three through four require that the sentence be calculated to ensure deterrence, reflect the seriousness of the offense, and protect the public. A sentence below 150 months, but within the guideline range of 84-105 months is sufficient to

19

provide deterrence and reflect the seriousness of the offense. And, as to factor five, it is clear from Lundy's post-conviction record and the limits imposed by his health that Lundy is no longer a threat to public safety if he is properly monitored. Consideration of all the § 3553(a) factors teach that a sentence reduction is warranted.

Recently, Lundy filed the DEFENDANT'S OMNIBUS MOTION TO EXPEDITE DISPOSITION OF 18 U.S.C. § 3582 MOTION AND, IN THE ALTERNATIVE, FOR MODIFICATION OF SUPERVISED RELEASE TERM UNDER 18 U.S.C. § 3583(e) (ECF No. 378) in which he (acting pro se, apparently through a "jail house lawyer" asks for an alternate remedy: the reduction of the four-year term of supervised release. That remedy is not consistent with the need to deter Lundy who has shown a propensity to repay leniency with new criminal conduct.

## CONCLUSION

Considering the record as a whole, the MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT (ECF No. 300) and the POSITION STATEMENT PURSUANT TO THE COURT'S ORDER (ECF No. 363) will be partially granted and the sentence will be reduced from 150 months to 105 months. In all other respects, the sentence will remain as imposed. The DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT §§ 3582(c)(1)(A)(i) AND 3553(a) SENTENCE FACTORS (ECF No. 266) will be denied as moot and DEFENDANT'S OMNIBUS MOTION TO EXPEDITE

DISPOSITION OF 18 U.S.C. § 3582 MOTION AND, IN THE ALTERNATIVE, FOR MODIFICATION OF SUPERVISED RELEASE TERM UNDER 18 U.S.C. § 3583(e) (ECF No. 378) will be denied.

It is so ORDERED.

_____/s/_____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: December  17 , 2025